# Supreme Court of Texas

No. 25-0008

In the Interest of C.S. Jr. and Z.S., Children

On Petition for Review from the
Court of Appeals for the Eleventh District of Texas

**Argued October 9, 2025**

JUSTICE YOUNG delivered the opinion of the Court, in which Chief Justice Blacklock, Justice Devine, Justice Sullivan, and Justice Hawkins joined.

JUSTICE LEHRMANN filed a dissenting opinion, in which Justice Bland and Justice Huddle joined, and in which Justice Busby joined as to Part II.

Subject-matter jurisdiction is a lawyerly term for the judicial power to decide a case. A party that brings a lawsuit to a court is invoking the court's jurisdiction. Every lawsuit's antecedent premise is that the court in which it is filed has the power to resolve the suit's underlying dispute. Jurisdiction is the power to do so. Seeking relief from a court without jurisdiction is as pointless as demanding a ride in a car without gas or electricity.

A court's first duty, therefore, is to ensure that its jurisdiction exists. If not, the court's only authority is to acknowledge the lack of jurisdiction

and remove the case from its docket without addressing the merits. Courts always have jurisdiction to determine their own jurisdiction, and on appeal, superior courts always have jurisdiction to assess the jurisdiction of the lower courts. We conclude that neither the trial court nor the court of appeals had jurisdiction to reach the merits in this case, and we therefore vacate their judgments.

Underlying this appeal is one of the many cases in which the government invokes judicial power to terminate a parent–child relationship—here, to terminate the parental rights of Mother, the petitioner in this Court, to her two children. Prompt resolution of parental-termination proceedings is so imperative a principle that our legislature has taken the extraordinary step of divesting trial courts of jurisdiction over cases that do not proceed to trial within a year. *See In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). Strong cases, weak cases, easy cases, hard cases—*every* case is subject to this jurisdictional mandate. Further underscoring the legislature's seriousness of purpose, the statute does not direct courts to dismiss cases but makes dismissal automatic, without any judicial action at all:

> Unless the court has commenced the trial on the merits or granted an extension under Subsection (b) or (b-1), on the first Monday after the first anniversary of the date the court rendered a temporary order appointing the department as temporary managing conservator, the court's jurisdiction over the suit affecting the parent-child relationship filed by the department that requests termination of the parent-child relationship or requests that the department be named conservator of the child *is terminated* and the suit is *automatically dismissed without a court order*. Not later than the 60th day before the day the suit is automatically dismissed, the court shall notify all parties to the suit of the

2

automatic dismissal date.

Tex. Fam. Code § 263.401(a) (emphasis added).

The statute authorizes this automatic dismissal to be delayed in exceptional circumstances, but only if the trial court properly grants a limited extension before the one-year deadline. *Id.* To grant the extension, the trial court must also comply with several requirements enumerated in § 263.401(b) that we have described as mandatory but not jurisdictional. *See In re J.S.*, 670 S.W.3d 591, 602 (Tex. 2023). Perhaps we have gone too far in that characterization; for purposes of today's case, we assume that we were correct.

In cases like this one, where it is undisputed that trial did not begin before the one-year deadline, the determinant of subject-matter jurisdiction is the § 263.401(a) extension order itself. The trial court correctly identified March 11, 2024, as the automatic-dismissal date. If the court did not properly grant an extension before then, it would automatically lose jurisdiction.

That threshold jurisdictional issue turns on what happened—or more precisely, what did *not* happen—at the February 23 pretrial hearing. That inquiry is harder to undertake than one might expect because the transcript is riddled with omissions. No court reporter was present, so the hearing was recorded and later partially transcribed. The result is a transcript that reflects multiple instances of inaudible or unintelligible statements, an unidentified speaker, and recording failure. The transcriptionist unlucky enough to draw this assignment memorialized these deficiencies with notations like "Unidentified Speaker"; "Unintelligible"; "Sotto voce discussion, unintelligible"; and "Audio cut out."

3

As best as we can tell, here is what occurred. Mother's counsel, Danna Wolfe, did not appear in court due to a medical issue. So at the trial court's request, the lawyer representing the Department of Family and Protective Services stepped out of the room to call Wolfe, then reported back on how long Wolfe thought she would need for trial. At that point, the parties determined that the presentation of evidence would take half a day.

The court correctly recognized March 11 as the fast-approaching statutory automatic-dismissal date. Based on the volume of cases on the court's docket, however, the judge stated: "I don't have anywhere to put a half day that works with everyone's schedules before March the 11th, so I think I have to grant an extension and we can pick a date . . . during trial week in April." The court then asked the department's counsel to "step out in the hall again" to contact Wolfe and seek her availability that week.

Then came the key events. First, the judge said: "I am grant—I am *going to have to grant* an extension." (Emphasis added.) Based on the off-the-record calls, the judge announced that Wolfe was available "any day except Monday" during the week of April 8. The judge then indicated that she was "going to put" the trial on April 12. Crucially, and highlighting her awareness that an extension had not *yet* been granted, she directed counsel for the department to "get me that extension order *before March 11th*." (Emphasis added.)

The department did not submit the requested extension order. Nor did the court take any other step to grant an extension before March 11, such as making a simple docket entry to indicate that an extension had been granted.

So after March 11 passed, Mother moved to dismiss the case for lack

4

of jurisdiction. This motion was entirely proper and could have been raised by any party, all of whom "remain duty-bound for as long as they invoke or submit to a court's authority to confirm the presence of jurisdiction and to raise jurisdictional defects." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 867 (Tex. 2023). In light of the statute's jurisdictional command, a case that proceeds beyond the automatic-dismissal date should prompt the court and all parties to carefully ensure that the court's jurisdiction remains secure.

At the hearing in response to Mother's motion to dismiss, Wolfe indicated that, due to the medical procedure that had caused her court absence in February, she had been "under the influence of quite a few medications" when the department asked about her availability for an April trial and she "was not made aware" that an extension was under consideration at the pretrial hearing. The attorney ad litem, who had attended the pretrial hearing, could not recall an extension having been granted. The court asked what would happen to the children upon dismissal, and the attorney ad litem expected that "they would just go back with mom." She was comfortable with that outcome because Mother had made "major strides since the beginning of the case," the concerns she had at the case's inception "ha[d] been alleviated," and the "kids desperately miss[ed] their mom and want[ed] to go home" (a fact she mentioned twice).

The court then entered its private notes from the pretrial hearing into the public record and issued an order purporting to retain the suit on its docket. Following the eventual trial, the court terminated Mother's parental rights. The court of appeals affirmed. 717 S.W.3d 1, 27 (Tex. App.—Eastland 2024). We granted Mother's petition for review.

5

We hold that the trial court lost jurisdiction on March 11.  The record leaves no doubt that, to its credit, the court understood that an extension must come *before* March 11.  Directing the government to supply a proposed order before then was not a whimsical request, a mere housekeeping task, or a formality of judicial administration.  March 11 was the day the court would lose jurisdiction—its power over the case—unless it invoked § 263.401(a)'s narrow exception to automatic dismissal *before* that date.

Equally clear is the trial court's understanding that it had not *yet* granted an extension.  "I am grant—I am going to have to grant an extension" reflects the point perfectly: the court was not at that point purporting to actually grant the extension.  The judge's initial "I am grant," followed by the corrective "I am going to have to grant," emphasizes that the granting was still in the future and that the requested order was essential to that step.

Indeed, getting the order from the government *before* March 11 was vital precisely because signing that order was *how* the trial court would grant the extension.  Our dissenting colleagues depict that never-fulfilled request as needless, treating a plan to grant an extension as equivalent to actually granting it.  The two are not the same.  One who firmly plans to get to the airport in time for a flight will not be treated as having arrived at the destination on time if he inadvertently ends up missing the flight.  A step necessary to preserve jurisdiction must be undertaken, not merely expected.

The court may have thought an extension was warranted and may have fully expected to grant it.  But it never did, which is the only thing that matters under the statute.  *Why* the extension was not granted, or

6

whose fault that was (if anyone's), is immaterial. Assigning fault is neither relevant nor helpful. Lawyers and judges, like everyone else, make mistakes. All involved in this case were busy and doing their best. Our system could not function without men and women who dedicate themselves to these sad cases—on the bench, on both sides of the bar, and as agents of the government seeking to protect children. The available resources are too few, the cases are too many, the legal process is too intricate, and the stories are too heart-wrenching. We cast no aspersion on anyone in the proceedings below. Fortunately, in this very case (and others like it), if Mother is indeed unfit, the State retains an arsenal of heavy weapons capable not only of protecting the children but even of instituting new termination proceedings if necessary.

But none of that is relevant to jurisdiction. Since March 11, 2024, the only lawful option for any court has been to recognize that the case was dismissed on that date. The trial court thus erred by proceeding to trial. The court of appeals erred by adjudicating the merits on appeal. This Court's authority is likewise limited to acknowledging the case's dismissal by operation of law and therefore vacating the judgments below.

Even if we could overlook *this* jurisdictional problem, however, a second defect would still require dismissal: no extension was granted in writing or orally in the presence of a court reporter before the statutory automatic-dismissal date. Our dissenting colleagues must defend the purported extension on this ground, too. For the avoidance of doubt in the lower courts, we again reject their conclusion.

The key point, as this Court has already explained, is that a valid extension can be granted only by rendering an order that complies with the

Family Code's specific definition of "render." In *G.X.H.*, we considered whether a trial court's docket entry made before the automatic-dismissal date—simply indicating "extension granted"—was sufficient to "avoid automatic dismissal and retain jurisdiction over the case" even though docket-sheet entries generally are "insufficient to constitute a decree of the court." 627 S.W.3d at 297 (quotation marks omitted). The department urged us to look to Family Code § 101.026 to determine whether the trial court had validly granted an extension order and therefore satisfied § 263.401(a). Section 101.026 states that "render" means "the pronouncement by a judge of the court's ruling on a matter" and dictates that a court's pronouncement must "be made orally in the presence of the court reporter or in writing, including on the court's docket sheet or by a separate written instrument." Tex. Fam. Code § 101.026.

We agreed with the department. Section 263.401(a) refers to "grant[ing] an extension," which constitutes an unusually serious and important ruling—the only one (according to our precedents) that determines *subject-matter jurisdiction*. The definition of "render" in § 101.026 sets forth *the means* by which trial courts must pronounce such rulings. The department thus correctly invoked § 101.026.

In turn, because § 101.026 expressly authorizes a court to "pronounce or render an order on its docket sheet," we held that "the only reasonable interpretation" of the docket entry was that the court "granted both a continuance of the trial date and an extension of the automatic dismissal date under section 263.401(b)." *G.X.H.*, 627 S.W.3d at 298. *Only* because § 101.026 authorizes rendition *by docket entry* was the extension valid in that case, as flimsy as the docket entry was (and bereft, too, of the

8

mandatory findings upon which an extension depends).  We did not question that "rendition" was required.  Given how strict the automatic-dismissal date is, and how important an extension is—the coach turns into a pumpkin at the stroke of midnight without one—the *least* that we could read the statute to demand is rendition.

We were correct in *G.X.H.* that § 101.026 informs what it means to grant an extension under § 263.401(a).  Rendition is *how* a "grant" is conveyed—it is the "judicial act by which the court settles and declares the decision of the law." *Baker v. Bizzle,* 687 S.W.3d 285, 292 (Tex. 2024) (quoting *Coleman v. Zapp*, 151 S.W. 1040, 1041 (Tex. 1912)). Subsection (b) requires a court to "render an order" making specific findings, and subsection (a) requires the court to "grant[] an extension." Section 101.026 recognizes the uncontroversial principle that granting an extension in a parental-termination case is to take the solemn step of pronouncing a legal ruling extending jurisdiction pursuant to highly limited statutory authority—*i.e.*, it is to render a decision that carries the force of law, thus triggering § 101.026, which requires that the "pronouncement . . . be made orally in the presence of the court reporter or in writing" in this context.  Tex. Fam. Code § 101.026.

This statutory obligation is no huge burden, in truth.  According to *G.X.H.*, a two-word public docket entry could do the trick if done before dismissal.  For *subject-matter jurisdiction* involving some of the most serious civil cases known to our law, *see D.V. v. Tex. Dep't of Fam. & Protective Servs.*, 722 S.W.3d 854, 858 (Tex. 2025), it is not too much to ask for at least a simple docket entry to prevent automatic dismissal.  To her credit, the trial judge wanted to do more than this absolute minimum.  She

intended to have a proper written order—presumably one that would have explained itself rather than rely on this Court's forgiving approach to the omission of the mandatory but non-jurisdictional findings. Doing so would not have been hard. The department could have provided a simple order; failing that, the trial court could have just written one itself. Failing even that, it at least could have added a docket entry before March 11.

It is true that § 101.026 currently authorizes rendition *either* by written order *or* given orally before a court reporter. Our dissenting colleagues, having stolen one base (asserting that mere intention to grant an extension is the same as actually granting one), seek to steal yet another by arguing that oral extensions *without* court reporters are no different from those announced *with* a court reporter. They invoke Family Code § 201.009 for this startling disregard of § 101.026's unambiguous command. But § 201.009 simply allows family-court judges to record their proceedings if a court reporter is not available. It says nothing about the specific requirements for *rendition*. A judge may simultaneously record proceedings without a court reporter (as § 201.009 allows) and "render" an order in writing (as § 101.026 commands). There is no conflict in the statutes. We hold that courts authorized to preserve proceedings without a court reporter under § 201.009 are still subject to § 101.026, which means that they should take the simple and easy step of rendering with a written order.

Even when there *is* a court reporter, however, a court is well advised to render an extension order (and indeed *any* order) in writing rather than orally. This is what the trial court here had planned to do. An extension order must be "reasonably calculated to make the decision accessible to the general public." *Baker*, 687 S.W.3d at 293. The specific jurisdictional

10

statute at issue is one that is poorly served by proceeding only orally. Section 263.401(a) is unusual in mandating *automatic* dismissal—that is, by operation of law rather than upon a court's order. An extension order that is publicly available on the docket before that date is the only certain and instant way of eliminating any doubt about whether the court has granted an extension and thus prevented automatic dismissal.

So even if a court *can* render some orders orally when a court reporter is present, that does not mean that it *should* do so, especially in this context. Texas courts now may enter orders electronically, making them instantly available to everyone; oral orders taken down by a court reporter become available only once the record is produced. The legislature may well find it worthwhile to consider whether anything other than written orders should constitute rendition in light of that salutary development. For a statute like § 263.401(a), instantly available written orders are especially important to achieving the legislature's purpose and avoiding later conflict about jurisdiction.

Even if under current statutes and rules we may tolerate an oral extension that is transcribed and eventually produced by a court reporter, oral orders recorded without a court reporter—such as the hearing in this case with the many technical problems we have described—are altogether off-limits for rendition. Judges may currently have the *authority* to orally render an extension before a court reporter, but we expect that they will instead choose the more prudent course of issuing a written order for matters as serious as extending the automatic-dismissal date of a parental-termination case.

*   *   *

The trial judge rightly focused on getting the extension done before March 11 and doing so by a written order. Yet March 11 came and went with no extension order. The court therefore lost jurisdiction by operation of law. It should not have proceeded to trial, and the court of appeals erred by reviewing the merits on appeal. No court—not this Court, not the lower courts—has or had jurisdiction to proceed to the merits, much less to render a judgment. The judgments below are accordingly vacated, and the case is dismissed for lack of jurisdiction.

Evan A. Young<br>
Justice

**OPINION DELIVERED:** June 5, 2026